IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| STEPHEN S. PUTNAL, )<br>)<br>Appellant, )<br>)<br>v. )<br>)<br>SUNTRUST BANK, )<br>)<br>Appellee. )<br>) | CIVIL ACTION NO. 5:12-CV-481(MTT) |

**ORDER**

Before the Court is an appeal from an order of the United States Bankruptcy Court for the Middle District of Georgia granting the Appellant Debtor's motion to use SunTrust Bank's cash collateral. (Doc. 1). The Debtor contends the Bankruptcy Court erred in the conditions it placed on his use of the cash collateral. This Court disagrees. For the reasons set forth below, the Bankruptcy Court's decision is **AFFIRMED**.

**I. STANDARD OF REVIEW**

The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a). In reviewing the decision of a bankruptcy court, a district court functions as an appellate court. *See Williams v. EMC Mortg. Corp. (In re Williams)*, 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam). In that capacity, district courts "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The Court must accept the Bankruptcy Court's findings of fact unless those facts are clearly erroneous. *Id*. The Court may not make independent factual findings of its own. *Equitable Life Assurance Soc'y v. Sublett (In re*

*Sublett)*, 895 F.2d 1381, 1384 (11th Cir. 1990).  Conclusions of law, however, including a bankruptcy court's interpretation and application of the Bankruptcy Code, are reviewed de novo.  See *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir. 1990).  This Court, therefore, owes no deference to the Bankruptcy Court's interpretation of the law or its application of the law to the facts.  *Goerg v. Parungao (In re Goerg)*, 930 F.2d 1563, 1566 (11th Cir. 1991).

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Debtor owns and manages several rent-producing properties, including one in Chattanooga that he leases to a nuclear pharmacy.  In March 2008, the Debtor entered into a Deed of Trust with SunTrust, granting SunTrust a security interest in the Chattanooga property, an assignment of rents, and a security interest in those rents.  (Doc. 1 at 189-90, ¶¶ 1, 3-4).  On December 5, 2011, the Debtor filed a Chapter 11 bankruptcy petition.  (Doc. 1 at 34).  SunTrust filed a more than $3.3 million claim, which was reduced to roughly $1.1 million after the Debtor surrendered other properties in which SunTrust had security interests under separate commercial notes.  The Parties agree that as of July 2012, the value of the Chattanooga property is $470,000.  They also agree that SunTrust has an unsecured claim of more than $500,000.  The Parties further agree that pursuant to 11 U.S.C. § 552(b)(2), SunTrust has a post-petition interest in rents produced by the Chattanooga property and these rents are SunTrust's "cash collateral" as defined in 11 U.S.C. § 363(a).

The Debtor leases the Chattanooga property for $6,966.10 per month.[1] The lease is a triple-net lease, which means the pharmacy pays the property's insurance, ad valorem taxes, and maintenance costs[2] separate from the monthly lease payments. Since filing his Chapter 11 petition, the Debtor has collected and placed into escrow more than $55,000 in rents from the property. More will accrue, and he would like to tap these funds to pay the costs of administering his bankruptcy. But because the rents are cash collateral, the Debtor cannot spend them without SunTrust's consent or court authorization.[3] 11 U.S.C. § 363(c)(2). Moreover, if the Court authorizes the Debtor to use the cash collateral, it must sufficiently prohibit or condition the use to provide "adequate protection" for SunTrust's interest. 11 U.S.C. § 363(e). Adequate protection may be achieved in several ways, such as by (1) requiring the Debtor to make cash payments to SunTrust to the extent his use of the rents decreases the value of SunTrust's interest in the property; (2) providing SunTrust an additional or replacement lien to this same extent; or (3) granting other relief that will provide SunTrust the "indubitable equivalent" of its interest in the property. 11 U.S.C. § 361. It is the Debtor's burden to prove SunTrust is adequately protected by his proposed use of the cash collateral. 11 U.S.C. § 363(p)(1).

---

[1] During oral argument, the Parties indicated this lease expired following the Bankruptcy Court's decision but has since been renewed. It is not clear to what extent, if any, the terms of the new lease have changed.

[2] However, the Debtor still incurs some unreimbursed maintenance costs for minor repairs. When projecting his business expenses before the Bankruptcy Court, the Debtor estimated he spent $12,474.46 per month, about 20 percent of which represents unreimbursed expenses attributed to four pharmacies, including the Chattanooga pharmacy.

[3] SunTrust does not consent to the Debtor's use of the cash collateral.

A few days after filing his Chapter 11 petition, the Debtor moved the Bankruptcy Court for authorization to use the cash collateral. (Doc. 1 at 144). SunTrust objected, and after several continuances, the Bankruptcy Court held a hearing August 22, 2012. At the hearing, the Debtor proposed to retain about $3,000 of each month's rent to pay the costs of his bankruptcy and other general expenses. This included the expense he incurred to have the Chattanooga property appraised and to renegotiate the lease with the pharmacy. He contended SunTrust's interest was unified in the land and rents, and that its interest was adequately protected because the value of the real property was not impaired. SunTrust argued its cash collateral was entitled to its own adequate protection, and that the Debtor's proposed use deprived it of that because every dollar the Debtor spent decreased the value of the collateral. Therefore, SunTrust reasoned, the Debtor was not entitled to use any of the rents.

The Bankruptcy Court granted the Debtor's motion, but found SunTrust held two distinct security interests – one in the real property, and one in rents the property produced. Therefore, to adequately protect the SunTrust's interest in rents, the Bankruptcy Court limited the Debtor's use of the money to (1) $5,000 incurred to appraise the Chattanooga property; (2) any expenses incurred in negotiating a new lease on the property; and (3) up to $623.72 per month to pay unreimbursed maintenance expenses.

On November 30, 2012, the Debtor appealed the Bankruptcy Court's order. This Court heard oral arguments March 12, 2013. Both Parties ask the Court to modify the Bankruptcy Court's opinion in their favor.

## III.  DISCUSSION

The Debtor raises several arguments on appeal.  However, they need not be dissected in great detail to address the overarching issue:  Whether SunTrust's security interest in rents, which admittedly is cash collateral, is separate collateral entitled to its own adequate protection.  Although the Eleventh Circuit has not addressed this issue, the weight of authority holds that a creditor's interest in rents is separate from its interest in the land and corresponds to the amount of rents that accrue.

Section 552(b)(2) of Title 11, which governs the post-petition treatment of cash collateral in Chapter 11 proceedings, provides:

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to…amounts paid as rents of [the debtor's] property…, then such security interest extends to such rents…acquired by the estate after the commencement of the case to the extent provided in such security agreement….

11 U.S.C. § 552(b)(2).  Here, the Deed of Trust grants SunTrust a security interest in:

> any and all leases and contracts affecting the [Chattanooga property] both presently existing and hereafter arising, and all rents, income, or profits which are now due or may hereafter become due …; all of which are hereby assigned to [SunTrust] as further security for the repayment of the indebtedness.

(Doc. 1 at 189, ¶ 1).  The agreement describes SunTrust's interest as an assignment entitling the bank, upon the Debtor's default, to "all rents…now or hereafter due":

> [The Debtor] hereby assigns to [SunTrust] all rents, revenues, incomes and profits of the [Chattanooga property], including those now or hereafter due, subject only to the condition that [SunTrust] shall not collect such rents, revenues, incomes and profits so long as [the Debtor] is not in default under this Deed of Trust. … Should the [Chattanooga property] be involved in any insolvency, receivership, bankruptcy, or other proceedings affecting the possession of said [property], it is further covenanted and

-5-

> agreed that [SunTrust] shall be entitled to all of the rents, issues and profits realized from or during any such proceedings, whether or not there shall exist a default under this Deed of Trust. Such rents shall be treated as cash collateral.

(Doc. 1 at 190, ¶ 3).

By virtue of the Deed of Trust, SunTrust possesses a separate security interest in the rents produced by the Chattanooga property. Most of the few courts addressing this issue have held that the value of this interest should be measured by the actual rents that have accrued or will accrue. *See In re Landing Associates, Ltd.*, 122 B.R. 288 (Bkrtcy. W.D. Tex. 1990); *In re 499 W. Warren Street Associates*, 142 B.R. 53 (Bkrtcy. N.D.N.Y. 1992); *Traveler's Ins. Co. v. River Oaks Ltd. Partnership*, 166 B.R. 94 (E.D. Mich. 1994); *Stearns Building v. WHBCF Real Estate*, 165 F.3d 28, 1998 WL 661071 (6th Cir. 1998) (unpublished table decision); *In re Griswold Building*, 420 B.R. 666 (Bkrtcy. E.D. Mich. 2009); *In re Buttermilk Towne Center, LLC*, 442 B.R. 558 (6th Cir. B.A.P. 2010); *In re Smithville Crossing*, 2011 WL 5909527 (Bkrtcy. E.D.N.C.).

The Sixth Circuit's unpublished opinion in *Stearns* and the Sixth Circuit Bankruptcy Appellate Panel's decision in *Buttermilk Towne Center* are particularly instructive. In *Stearns*, the bankruptcy court had rejected the debtor's request to use rents for administrative expenses, which he proposed to adequately protect by granting the creditor a replacement lien,[4] and ordered him to surrender the rents as cash collateral. 1998 WL 661071 at *2. The debtor asked for a stay while he appealed. The

---

[4] At one time, some courts found this acceptable. The replacement lien theory was based on the idea that if a debtor continued to generate an income stream through rents, his use of the income would not diminish its value as collateral because the lender retained a lien in all future rents. In that fashion, the lien on each month's rents would replace the lien on the prior month's rents. *See In re Mullen*, 172 B.R. 473, 476 (Bankr. D. Mass. 1994); *In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997).

bankruptcy and district court denied the request, and in appealing that decision to the Sixth Circuit, the appellate court considered whether the debtor was likely to prevail on the merits. *Id.* at *2-3. The court determined he would not, because his proposed diversion of the net rents would diminish the creditor's interest in the assignment of rents portion of its perfected security interest:

> [The creditor] is entitled to receive adequate protection for Debtor's use of the net rents generated post-petition if the rents constitute "cash collateral" and there is compliance with 11 U.S.C. § 552(b). Both requirements are met here. 11 U.S.C. § 363(a) expressly provides that rents are "cash collateral." In addition, 11 U.S.C. § 552(b)(2) generally provides that, if there is a pre-petition security agreement that extends to pre-petition property and to amounts paid as rents of such property, then that security interest extends to post-petition rents to the extent provided in the security agreement. In the present case, the pre-petition security agreement establishes that, upon default, "[Debtor] in such case does hereby bargain, sell, assign and set over to [the creditor] all the rents, income and profits, which, whether before or after foreclosure of this mortgage or during the period of redemption, shall accrue and be owing for the use or occupation of [the complex] ." … Hence, it is clear that Debtor must provide adequate protection if it is to use the net rents.

*Stearns*, 1998 WL 661071 at *4. In reaching this conclusion, the court rejected the debtor's proposal to grant the creditor "'a replacement lien in all types and descriptions of collateral which may have been secured by [its] pre-petition loan documents which are created, acquired, or arise after the petition date,' in the amount of all cash collateral which [the debtor] uses but does not replace." *Id.* at *2. A replacement lien simply did not provide adequate protection for the use of the rents. *Id.* at *3-4.

In *Buttermilk Towne Center* the debtor's debt was also secured by, among other collateral, an assignment of rents. 442 B.R. at 565. Again, the debtor asked to use cash collateral, including the rents, to pay administrative expenses. And again, the debtor proposed to grant the lender a replacement lien in the cash collateral. *Id.* In

short, the exact issue before the *Buttermilk Towne Center* panel was the exact issue presented in *Stearns*, and it is the exact issue now before this Court: "whether a lender is adequately protected by a replacement lien on rents in which the lender has an independent security interest?" 442 B.R. at 565. For *Buttermilk Towne Center*, the answer was no. It found *Stearns* directly on point in holding that a replacement lien did not provide adequate protection. 442 B.R. at 566.

The Debtor's arguments in this case rest on the idea that SunTrust's interest in rents is subsumed by its interest in the real property, and that so long as the real property's value is not declining, all that must be protected is a *lien* in rents. In a very narrow and very abstract sense, this argument has some logic. When the value of property is determined by the income method of appraisal, the rents undergird the value of the property. So long as the stream of rents is guaranteed to continue, regardless of whether the rents accrue, the value of the property is maintained. Here, however, the Debtor's argument ignores the nature of the interest actually assigned to SunTrust. SunTrust took more than security necessary to maintain the value of the property; it took an interest in the cash generated by the property. To treat SunTrust's interest as an interest in only the existence of a lien in rents to protect the value of the property is to adopt a replacement lien theory, which does not provide adequate protection for SunTrust's interest in the revenue the rents produce. *See Buttermilk Towne Center*, 442 B.R. at 566.

Even though a few courts once followed it, the replacement lien theory has by now been generally discredited, and not just by the Sixth Circuit panels. Most courts recognize that a prepetition security interest in rents is a special kind of collateral that,

pursuant to 11 U.S.C. § 552(b), continues in full force and effect after the petition is filed.  As such, the replacement lien theory's purported protection is seen as "illusory."  *In re Smithville Crossing, LLC*, 2011 WL 5909527 at *10.  Put another way, a replacement lien simply provides no protection for the very real interest the creditor has in accruing rents.  That is why "virtually every case addressing this issue" has rejected the replacement lien.  *Id.*  This Court now does the same.

Given that SunTrust holds two distinct pre-petition interests requiring adequate protection, and given that the value of its interest in rents is measured by the rents actually generated, the Debtor's remaining arguments fall away.  As an initial matter, the Debtor's request for remand to conduct an 11 U.S.C. § 506(a) valuation is unfounded.  The Bankruptcy Court adopted the Parties' *stipulated* value of the Chattanooga property and the extent to which SunTrust is undersecured.  Additionally, there is no constitutional equal protection concern or violation of the cross-collateralization prohibition in *Matter of Saybrook Mfg. Co., Inc.*, 963 F.2d 1490 (11th Cir. 1992), because there has been no post-petition collateralization of previously unsecured claims.  Even though the post-petition value of the rents increases each month, SunTrust's security interest is in that continually increasing value, and this interest existed prior to the filing of the petition.  Similarly, that there are two distinct interests and that the interest in rents must be protected dollar for dollar forecloses the Debtor's functional obsolescence argument.

Finally, the Court is not persuaded by the Debtor's strenuous advocacy of "dual valuation" as discussed in *In re Addison Props. Ltd.*, 185 B.R. 766 (Bkrtcy. N.D. Ill. 1995).  First, that theory has not been widely adopted.  Second, its criticism of

continuous valuation focuses on interests in property that fluctuates in value according to market forces rather than interests in rents that increase by accrual and do not decline. Third, considering that SunTrust's pre-petition interest in rents can technically be valued *ad infinitum*, it is of no help to the Debtor to value rents for adequate protection purposes at the time the petition is filed. For even then, the value of SunTrust's interest is essentially unlimited.

Accordingly, SunTrust has a secured interest in each dollar in rents that accumulates, and each of those dollars is entitled to adequate protection. The Debtor may not use any of the rents to administer his bankruptcy or for other general purposes, because for each dollar in rents he spends, he deprives SunTrust of the adequate protection of that dollar. The Debtor's use of rents is therefore limited to expenses that are "directly related to the operation, maintenance, or preservation of the" Chattanooga property, or that "are reasonable and necessary to preserving or disposing of such property and are incurred primarily for the benefit of the secured creditor." *In re River Oaks Ltd. Partnership*, 166 B.R. at 99-100. The Bankruptcy Court determined this authorized use includes (1) $5,000 incurred to appraise the Chattanooga property; (2) any expenses incurred in negotiating a new lease on the property; and (3) up to $623.72 per month to pay unreimbursed maintenance expenses.

Over SunTrust's objection, this Court agrees these uses are permissible. They are necessary to either maintain the Chattanooga property or to preserve its value for SunTrust's benefit. Therefore, this Court does not alter the Bankruptcy Court's decision.

## IV. CONCLUSION

This Court does not view any of the facts found by the Bankruptcy Court as clearly erroneous and therefore does not disturb its findings of fact.  Furthermore, this Court, having reviewed the applicable law and the arguments of the Parties, agrees with the lower court's conclusions of law and the application thereof.  The decision of the Bankruptcy Court is **AFFIRMED**.

**SO ORDERED,** this 28th day of March, 2013.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT